**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                   :

hip (HEIGHTENED INDEPENDENCE    :
AND PROGRESS), INC., a New Jersey   :
Not-for-Profit Corporation, and UNITED  :
SPINAL ASSOCIATION, a New York    :         Civil Action No. 07-2982 (JAG)
Not-for-Profit Corporation,            :
                                 :             **OPINION**
                                 :
          Plaintiffs,           :
                                 :
             v.              :
                                 :
THE PORT AUTHORITY OF NEW     :
YORK AND NEW JERSEY,         :
                                 :
          Defendant.        :
_____:

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion to dismiss the Complaint by

Defendant Port Authority of New York and New Jersey ("Defendant"), pursuant to FED. R. CIV.

P. 12(c). For the reasons set forth below, Defendant's motion to dismiss shall be granted, in part,

and denied, in part.

## I. BACKGROUND

Plaintiffs hip (Heightened Independence and Progress), Inc. ("hip Inc.") and United

Spinal Association ("USA," and, collectively with hip Inc., "Plaintiffs") are private not-for-profit

organizations that have memberships consisting, in part or in sum, of persons with mobility-

impairing physical handicaps or disabilities. (Compl. ¶¶ 1-2, 5-6.) Included among Plaintiffs'

disabled members are persons who live, work, or recreate around New York City, and who would use the Port Authority Trans Hudson (the "PATH") Station at Grove Street in Jersey City, New Jersey (the "Grove Street Station") if it were accessible to them.  (Id. ¶¶ 7-8.)

Defendant, which owns and operates the PATH transit system, completed extensive alterations of, and additions to, the Grove Street Station in the spring or summer of 2005.  (Id. ¶¶ 16-17.)  These alterations and additions included a new entrance to the Grove Street Station.  (Id. ¶ 18.)  The old and the new entrances to the Grove Street Station require the use of stairs, and therefore remain inaccessible to disabled persons.  (Id. ¶ 19.)

Plaintiffs contend that Defendant's failure to make the Grove Street Station accessible to persons with disabilities constitutes a violation of "New Jersey's Barrier-free Statute, New Jersey's Barrier-free Subcode, and New Jersey's Law Against Discrimination."  (Id. ¶ 21.)  Plaintiffs also assert that Defendant violated Title II of the Americans with Disabilities Act (the "ADA").  (Id. ¶ 26.)

## II.  STANDARD OF REVIEW

### A.  Motion For Judgment On the Pleadings Under Fed. R. Civ. P. 12(c)

A motion for judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c), may be filed after the defendant has filed an answer to the complaint.  Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 n.1 (3d Cir. 2004).  The standard for a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) is the same as that for a motion to dismiss under FED. R. CIV. P. 12(b) See Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in the applicable legal standards.").

**B.**   <u>**Motion To Dismiss Under Rule 12(b)**</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1959 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  <u>Twombly</u>, 127 S. Ct. at 1959.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  <u>Id.</u>

On a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  <u>See</u> <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  <u>See</u> <u>In re Warfarin Sodium</u>, 214 F.3d 395, 397-98 (3d Cir. 2000).  That is, a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 127 S. Ct. at 1960 (abrogating <u>Conley</u>, 355 U.S. 41). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Semerenko v. Cendant Corp.</u>, 223 F.3d 165, 173

(3d Cir. 2000).  While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  <u>Morse v. Lower Merion School District</u>, 132 F.3d 902, 906 (3d Cir. 1997).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  <u>Kost v. Kozakewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, <u>Fed. Practice & Procedure</u>: Civil 2d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  <u>See</u> <u>W. Penn Power Co.</u>, 147 F.3d at 259; 5A Wright & Miller, <u>Fed. Practice & Procedure</u>: Civil 2d § 1357.  Any further expansion beyond the pleadings, however, may require conversion of the motion into one for summary judgment.  F ED. R. C IV. P. 12(b).

### III.  <u>ANALYSIS</u>

### A.  <u>The Statute of Limitations Does Not Bar Plaintiffs' ADA Claim</u>

Defendant argues that Plaintiffs' ADA claim must be dismissed as untimely because the entrance to the Grove Street PATH Station was reopened on May 15, 2005, more than two years before Plaintiffs filed the Complaint.

Since the text of the ADA does not contain a statute of limitations, the limitations period for personal injury actions must be applied to ADA claims.  <u>Burkhart v. Widener Univ., Inc.</u>, 70 F. App'x 52, 53 (3d Cir. 2003). New Jersey law requires actions for personal injuries to be filed within two years after the claim accrues.  The applicable statute specifically states that

> [e]very action at law for an injury to the person caused by the
> wrongful act, neglect or default of any person within this State shall
> be commenced within 2 years next after the cause of any such action
> shall have accrued . . . .

N.J. Stat. Ann. § 2A:14-2.

Plaintiffs filed the Complaint on May 31, 2007 in the New Jersey Superior Court, Law Division, Hudson County. Therefore, if Plaintiffs' ADA claim accrued before June 1, 2005, it would be barred under the applicable statute of limitations.

"The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises." Burkhart, 70 F. App'x at 53. Plaintiffs' ADA cause of action accrued when they knew, or had reason to know, of the injury that is the basis of the action. Id.; see also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385-86 (3d Cir. 1994). Specifically,

> there will . . . be occasions when an aggrieved person does not
> discover the occurrence of the alleged unlawful employment practice
> until some time after it occurred. The discovery rule functions in this
> latter scenario to postpone the beginning of the statutory limitations
> period from the date when the alleged unlawful employment practice
> occurred, to the date when the plaintiff actually discovered he or she
> had been injured.

Id. at 1386.

Defendant contends that Plaintiffs' ADA claim accrued on May 15, 2005, when the Grove Street Station was re-opened. In response, Plaintiffs assert that Defendant's failure to construct an ADA-compliant entrance for the Grove Street Station to date constitutes an ongoing violation of the ADA within the specified limitations period. This Court concurs with Plaintiffs' argument, and finds that the ADA claim was commenced timely.

Under the continuing violation doctrine, an action is timely if the defendant's conduct is part of a continuing practice, and the last act evidencing the continuing practice occurs within the limitations period. Voices for Independence (VFI) v. Penn. Dept. of Trans., No. 06-78 Erie, 2007 WL 2905887, at *4 (W.D. Pa. Sept. 28, 2007) (quoting Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Amer., 927 F.2d 1283, 1295 (3d Cir. 1991)). The conduct may not constitute the mere occurrence of isolated or sporadic acts, however. Id.

Three factors are considered to determine whether the defendant's actions constitute a continuing practice:

> (1) subject matter - whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency - whether the acts are recurring or more in the nature of isolated incidents; and (3) the degree of permanence - whether the act has a degree of permanence such that it should have triggered the plaintiff's awareness of and duty to assert his rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

Id.

Defendant's construction of a public transportation entrance that is inaccessible to disabled persons, and its failure to remedy the improper construction, constitutes a continuing violation. Although Defendant reopened the Grove Street Station on May 15, 2005, the conditions impeding its accessibility to disabled persons persist, according to the Complaint.

It is both reasonable and plausible that Plaintiffs became aware of the violation on or after June 1, 2005, less than one month after the Grove Street PATH Station entrance reopened. Id. ("While we agree with Defendants that it is acts of 'new construction' and/or 'alterations' which trigger a public entity's *duty* to install the requisite curb cuts . . . . a plaintiff's cause of action

premised upon the installation of a defective curb ramp [does not] automatically accrue on the very date of the installation."). "The issue of when a defendant's duty arises (and/or when it is breached by perpetration of a discriminatory act) is distinct from the issue of when a plaintiff's injury arises or when his cause of action begins to accrue." Id. at 13. The accrual date of Plaintiffs' ADA claim, therefore, is not automatically established by the date on which the new entrance was opened to the public. Defendant has not proven that Plaintiffs, or their members, knew or should have known of the Grove Street Station's inaccessible entrance on the very date that it re-opened.[1]

Furthermore, to establish a claim under Title II of the ADA, Plaintiffs must prove that they, or their members, were denied access to the Grove Street PATH Station, irrespective of the date on which the entrance was defectively constructed. See Voices, 2007 WL 2905887, at *13 (holding that plaintiff's ADA claim was timely filed, despite the fact that the defective curb cut was installed more than two years after the complaint was filed, because "it is conceivable that a particular qualified individual with a disability might not be able to demonstrate the requisite injury until some point in time, well beyond the two-year post-installation period, when previously unforeseen circumstances bring him or her into contact with that non-compliant site"). The re-opening of the Grove Street PATH Station, alone, did not injure Plaintiffs. Only after

---

[1] Kathleen Wood, Director of hip Inc., learned of the problem with the Grove Street PATH Station after receiving a carbon copy of a letter dated June 22, 2005 to Shawn Laurenti, Defendant's Director of Government and Community Relations, from Barry Dugan, Hudson County Freeholder, expressing his concerns about the inaccessible entrance. (Certification of Kathleen Wood ¶ 8.) Similarly, USA learned of the newly-constructed, inaccessible entrance in October of 2005, when David Popiel from the Community Health Law Project brought it to his attention. (Certification of James Weisman ¶ 4.) Although the standard under 12(c) does not permit consideration of these certifications, they further bolster this Court's conclusion.

Plaintiffs' members attempted to use the Grove Street PATH Station, and realized that it was not accessible to disabled persons, was an injury sustained.

Defendant has not met its burden of showing that Plaintiff's ADA claim accrued on May 15, 2005. This Court shall not hold that the applicable two-year statute of limitations bars Plaintiffs' ADA claim.

**B.**    **Plaintiff's State Law Claims Warrant Dismissal**

Defendant argues that, as a bi-state entity, it is not subject to liability under the New Jersey Barrier-Free Statute,[2] the New Jersey Barrier-Free Subcode, codified at N.J. ADMIN. CODE §§ 5:23-7.1 et seq., and the New Jersey Law Against Discrimination (the "NJLAD"), codified at N.J. STAT. ANN. §§ 10:5-1 et seq.

"The Port Authority was created in 1921 by a Compact between New York and New Jersey, which was consented to by Congress. The goal of the Compact is to develop public transportation, terminal and other facilities of commerce within the Port of New York District." King v. Port Auth. of N.Y. and N.J., 909 F. Supp. 938, 943 n.4 (D.N.J. 1995), aff'd, 106 F.3d 385 (3d Cir. 1996).

The Compact prohibits one state from unilaterally imposing duties on Defendant unless the sister state concurs in an act of legislation. See N.J. STAT. ANN. § 32:1-8. Thus, the "[NJ]LAD may only be applied to the Port Authority if New York has concurrently adopted the same legislation [as New Jersey,] or if the states have similar legislation which purport to apply to the Port Authority. Since neither of these situations is present, [NJ]LAD may not be applied to

---

[2] Neither the Complaint, nor Plaintiffs' opposition brief, provide a citation to the New Jersey Barrier-Free Statute.

the Port Authority." King, 909 F. Supp. at 945.

Although New York's Human Rights Law is "substantively similar" to NJLAD, id. at 946, it does not purport to apply to the Port Authority:

> The absence from the text and legislative history of [New York's] Human Rights Law and [NJ]LAD of any mention of [the Port Authority], in addition to the absence of an express statement by either state legislature that it was amending or supplementing the provisions of the Compact and that the law would take effect upon the enactment of identical legislation in the opposite state, seems to indicate that neither New York nor New Jersey legislatures intended the laws to apply to the internal operations of [the Port Authority].

Settecase v. Port Auth. of N.Y. and N.J., 13 F. Supp. 2d 530, 535 (S.D.N.Y. 1998) (citing Baron v. Port Auth. of N.Y. and N.J., 968 F. Supp. 924, 929 (S.D.N.Y. 1997)).  Plaintiffs cannot sustain a claim against Defendant under the NJLAD since Defendant is not subject to the state statute's jurisdiction.

Likewise, to hold Defendant liable under the New Jersey Barrier-Free Statute and the New Jersey Barrier-Free Subcode would permit a single state to impose responsibilities and duties on the bi-state entity.  Cf. E. Paralyzed Veterans Ass'n v. City of Camden, 545 A.2d 127, 132 (N.J. 1988) (declining to impose restrictions set forth in the New Jersey State Uniform Construction Code, codified at N.J. STAT. ANN. §§ 52:27D-119 to -141, against the Delaware River Port Authority, a bi-state entity).  The Charter did not empower the state of New Jersey to implement such constraints on Defendant's conduct unilaterally.

In their opposition brief, Plaintiffs asked this Court to adopt the "internal-external distinction" recognized by the Second Circuit and other New York courts.  See, e.g., Agesen v. Catherwood, 260 N.E.2d 525, 525-27 (N.Y. 1970); Dezaio v. Port Auth. of N.Y. and N.J., 205 F.3d 62, 65 (2d Cir. 2000) (relying on Agesen for the proposition that "internal operations of the

Authority – unlike its external conduct which is subject to each of the Compact State's health and safety laws – are independent from the unilateral control of either State without the other's concurrence"); Baron v. Port Auth. of N.Y. and N.J., 968 F. Supp. 924, 928 (S.D.N.Y. 1997). The doctrine draws a distinction between the internal operations and the external relations of the Authority, finding that "New York and New Jersey have each undoubted power to regulate the external conduct of the Authority . . . ." Agesen, 260 N.E.2d at 526-27. As a result, the court found that the Port Authority of New York and New Jersey "is subject to New York's laws involving health and safety, insofar as its activities may externally affect the public." Id. at 527.

This Court declines to apply the "internal-external distinction" set forth by the New York courts. Although the interpretation of the Compact, an interstate agreement, is a question of federal law, this Court shall adopt the reasoning set forth by the New Jersey Supreme Court in Eastern Paralyzed Veterans Association v. City of Camden. In Eastern Paralyzed Veterans Association, plaintiff sued the City of Camden and the Delaware River Port Authority for failing to install an elevator connecting the downtown transportation terminal to the train station. 545 A.2d at 129-30. The court considered whether New Jersey's barrier-free design requirements, established under statutory law to aid the handicapped, may be applied to the Delaware River Port Authority, which was created by both New Jersey and Pennsylvania law. Id. at 128.

The New Jersey Supreme Court ultimately held that New Jersey could not exercise unilateral jurisdiction over a bi-state entity by requiring adherence to its barrier-free design requirements. Id. In so holding, the court declined to adopt the internal-external distinction set forth in Agesen. Id. at 132. "Only when the compact itself recognizes the jurisdiction of the compact states may it be subject to single-state jurisdiction." Id.

10

The Compact that established Defendant does not contemplate single-state jurisdiction, but instead states, without exception, that "[t]he [P]ort [A]uthority shall have such additional powers and duties as may hereafter be delegated to or imposed upon it from time to time by the action of the legislature of either state *concurred in by the legislature of the other.*"  N.J. STAT. ANN. § 32:1-8 (emphasis added).  Nothing in the language of this statute suggests that a single state may limit Defendant's external activities through the passage of legislation.  In conformance with this statutory mandate, and with the New Jersey Supreme Court's ruling in Eastern Paralyzed Veterans Association, this Court shall not permit Plaintiffs to proceed with their claims under the New Jersey Barrier-Free Statute, the New Jersey Barrier-Free Subcode, and the NJLAD.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss shall be granted, in part, and denied, in part.  While Plaintiffs' ADA claim shall remain before this Court, Plaintiffs' claims under the New Jersey Barrier-Free Statute, the New Jersey Barrier-Free Subcode, and the NJLAD shall be dismissed, with prejudice.

March 27, 2008

                    S/Joseph A. Greenaway, Jr.
                   JOSEPH A. GREENAWAY, JR., U.S.D.J.