NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HEIGHTENED INDEPENDENCE AND PROGRESS, a New Jersey Not-for-Profit Corporation, and UNITED SPINAL ASSOCIATION, a New York Not-for-Profit Corporation, | Civil Action No. 07-2982 (JAG) |
| Plaintiff, | OPINION |
| v. |  |
| PORT AUTHORITY OF NEW YORK AND NEW JERSEY, |  |
| Defendant. |  |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion to dismiss Count II of Plaintiffs' Complaint by Defendant Port Authority of New York and New Jersey ("Defendant"), pursuant to FED. R. CIV. P. 12(c). For the reasons set forth below, Defendant's motion to dismiss shall be denied.

## I. BACKGROUND

Plaintiffs hip (Heightened Independence and Progress), Inc. ("hip Inc.") and United Spinal Association ("USA") (collectively "Plaintiffs") are private not-for-profit organizations that have memberships consisting, in part or in sum, of persons with mobility-impairing physical handicaps or disabilities. (Compl. ¶¶ 1-2, 5-6.) Included among Plaintiffs' members are persons

1

who live, work, or recreate around New York City, and who would use the Port Authority Trans Hudson (the "PATH") Station at Grove Street in Jersey City, New Jersey (the "Grove Street Station"), if it were accessible to them.  (Id. ¶¶ 7-8.)

Defendant, which owns and operates the PATH transit system, completed extensive alterations of, and additions to, the Grove Street Station in the spring and summer of 2005.  (Id. ¶¶ 16-17.)  These alterations and additions included a new entrance to the Grove Street Station.  (Id. ¶ 18.)  The old and the new entrances to the Grove Street Station require the use of stairs, and therefore remain inaccessible to disabled persons.  (Id. ¶ 19.)  Defendant is a public entity within the meaning of Title II of the Americans with Disabilities Act, and is therefore subject to its provisions and regulations promulgated thereunder.  (Id. ¶ 23.)

On March 26, 2006, Plaintiffs filed a Complaint with the Federal Transit Administration (FTA) office of Civil Rights, alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201, et seq.  A file was opened by the FTA and identified as FTA Complaint # 06-0155.  Plaintiffs filed a Complaint with the FTA in the hope that they could avoid litigation. (Plaintiff's Br. at 1.)  Plaintiffs then filed the current action in State Court (later removed to federal court), when after more than a year, the FTA had taken no action, and plaintiffs were faced with the running of the statute of limitations.  (Id.)

Plaintiff's Complaint included claims under "New Jersey's Barrier-free Statute, New Jersey's Barrier-free Subcode, and New Jersey's Law Against Discrimination."  (Compl. ¶ 21.)  Plaintiffs also asserted that Defendant violated Title II of the Americans with Disabilities Act (the "ADA").  (Id. ¶ 26.)  This Court, by order dated March 27, 2008 granted Defendant's motion to dismiss the Complaint as to the state law claims.  (Def. Br. at 1).  This Court held that the

2

remaining ADA claim was not barred by the statute of limitations and could proceed. (Id.) Defendant filed a motion to dismiss the remaining ADA claim. Defendant argues that the Complaint must be dismissed because this matter is now pending before the Federal Transportation Administration ("FTA"), which has primary jurisdiction over the remaining issue raised in the Complaint.

## II.  STANDARD OF REVIEW

**A.     Motion For Judgment On the Pleadings Under Fed. R. Civ. P. 12(c)**

A motion for judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c), may be filed after the defendant has filed an answer to the complaint. Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 n.1 (3d Cir. 2004). The standard for a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) is the same as that for a motion to dismiss under FED. R. CIV. P. 12(b) See Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in the applicable legal standards.").

**B.     Motion To Dismiss Under Rule 12(b)**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 127 S. Ct. at 1959. "Factual allegations must

be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id.

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  That is, a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1960 (abrogating Conley, 355 U.S. 41). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).  While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  See W. Penn Power

Co., 147 F.3d at 259; 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357. Any further expansion beyond the pleadings, however, may require conversion of the motion into one for summary judgment. FED. R. CIV. P. 12(b).

### III. DISCUSSION

#### A. FTA Enforcement of the ADA

Title 49 of the Code of Federal Regulations requires recipients of federal funding to comply with the applicable requirements of the ADA: "Recipients subject to this part (whether public or private entities as defined in 49 C.F.R. part 37) shall comply with all applicable requirements of the Americans with Disabilities Act (ADA) of 1990...." 49 C.F.R. § 27.19. These provisions when viewed in combination with 49 C.F.R. Part 37, establish that the FTA has jurisdiction to hear ADA claims. Section 37.1 of Title 49 of the Code of Federal Regulations provides, "The purpose of this part is to implement the transportation and related provisions of titles II and III of the Americans with Disabilities Act of 1990." Section 37.9 sets forth standards for accessible transportation facilities: (a) For purposes of this part, a transportation facility shall be considered to be readily accessible to and usable by individuals with disabilities if it meets the requirements of this part and the requirements set forth in Appendices B and D to 36 C.F.R. part 1191, which apply to buildings and facilities covered by the Americans with Disabilities Act, as modified by Appendix A to this part."

The FTA administrator is charged with ensuring that transportation facilities covered under the ADA are in compliance with the requirements of the ADA. See 49 C.F.R. § 39.1 (d)(5), "A determination of compliance will be made by the Administrator of the concerned operating administration on a case-by-case basis, with the concurrence of the Assistant Secretary

for Transportation Policy."   The "Administrator" is explicitly defined as the "Administrator of the Federal Transit Administration, or his or her designee."  49 C.F.R. § 37.3.  See Neighborhood Ass'n Of The Back Bay, Inc. v. Federal Transit Admin., 463 F.3d 50 (1st Cir. 2006) ("The FTA determined that placing the handicap accessible elevator entrance 150 feet from the main entrance would create a segregated handicap entrance and violate ADA regulations . . . The FTA's conclusion in this respect is not arbitrary or capricious"); Melton v. Dallas Area Rapid Transit, 391 F.3d 669 (5th Cir. 2004) ("DART's current paratransit plan-which is approved as compliant with title II of the ADA by the Federal Transit Administration ("FTA")-provides curb-to-curb, shared-ride service for people with disabilities who are unable to use DART's fixed route system of buses or trains").

### B.  Primary Jurisdiction Doctrine

"Primary jurisdiction is a doctrine that requires a court to transfer an issue within a case that involves expert administrative discretion to the federal administrative agency charged with exercising that discretion for initial decision."  See Richman Bros. Records, Inc. v. U.S. Sprint Comm. Co., 953 F. 2d 1431, 1435, n.3 (3d Cir. 1991), cert. den. 505 U.S. 1230 (1992).  Primary jurisdiction applies . . . where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.  See U.S. v. Western Pacific Railroad Company et al., 352 U.S. 59, 63-64 (1956). "No fixed formula exists for applying the doctrine of primary jurisdiction.  In every case the question is whether the reasons for the existence of the doctrine are present and whether the

purposes it serves will be aided by its application in the particular litigation." Id. at 64.  In Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 736 (3d Cir. 1983), the Third Circuit stated that the doctrine is "divided between courts and administrative agencies" and calls for judicial abstention in cases where the integrity of a regulatory scheme dictates preliminary resort to an agency which administers the scheme.

In Global NAPS v. Bell Atlantic-New Jersey, 287 F. Supp. 2d 532, 549 (D. N.J. 2003), this Court set out four factors that some courts have found helpful in determining whether to apply the doctrine.  The four factors are: "(1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made."

Plaintiffs argue that defendant's failure to make alterations of and additions to the Grove Street PATH station readily accessible to and usable by individuals with disabilities constitutes a violation of Title II of the Americans with Disabilities Act.  (Compl. ¶ 23).  Plaintiffs seek judgment from this Court ordering the defendants to render the Grove Street Station readily accessible to and usable by individuals with disabilities by installing an elevator and by taking whatever other measures are required by the ADA.

Under factor (1) of the Global NAPS test this Court finds that there are no technical or policy considerations within the FTA's particular field of expertise.   Although the particular questions at issue in this case–whether the PATH should be required to install an elevator in the Grove Street PATH station and whether the alterations are in compliance with the ADA, is

within the expertise of the FTA, the questions are also within the conventional experience of judges. This is a matter of interpreting a civil rights statute, which is within the historic competence of judges. See Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transp. Authority, 539 F.3d 199 (3d Cir. 2008) (Claim brought under Title II of the ADA concerning whether elevators should have been installed during the alterations of two subway stations deemed appropriate subject matter for district court ruling).

Applying factor (2), this Court does not find that the issue is particularly within the FTA's discretion. The questions before this Court are issues raised by the language of the ADA. Congress has not granted the FTA any particular discretion to interpret the ADA. See generally, Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 et seq.

Analyzing factor (3), this Court finds that there is no danger of inconsistent rulings. This case involves whether elevators should have been installed at one particular PATH station, so there is no broad implication for the overall ADA regulatory scheme. See Global NAPS, 287 F. Supp. 2d at 549 ("Furthermore, the potentiality of inconsistent rulings regarding interpreting the terms of agreements previously approved by the BTU militates in favor of referring this issue to the BPU").

Factor (4) in the Global NAPS analysis is whether a prior application to the agency has been made. The Plaintiffs filed a complaint with the FTA in order to avoid litigation in March 2006. After waiting a year for FTA action the Plaintiffs filed the instant action in state court, which was later removed to federal court. Plaintiffs have since withdrawn their application to the

8

FTA.[1]

Based on this Court's analysis of the four factors outlined in Global NAPS, there is an insufficient basis upon which to apply the doctrine of Primary Jurisdiction. Third Circuit law counsels against applying the doctrine of Primary Jurisdiction in cases where the court is equally well-suited to hear the case. See MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1104 (3d Cir. 1995) "Courts should not be too hasty in referring a matter to an agency, or to develop a 'dependence' on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's 'expertise.' 'Expertise' is no talisman dissolving a court's jurisdiction. Accommodation of the judicial and administrative functions does not mean abdication of judicial responsibility....Therefore, where the subject matter is within an agency's jurisdiction and where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency.... Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility." (Third Circuit found primary jurisdiction and stated that issues that implicate a utility's tariff are deemed to be within the special expertise of the Public Utilities Commission). (Id.)

---

[1] Plaintiffs have withdrawn their complaint to the FTA by letter of May 8, 2008 to David Knight of the FTA office of Civil Rights. (Popiel Cert. ¶ 7, Ex.2).

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Count II of Plaintiffs' Complaint shall be denied.  Plaintiffs' ADA claim shall remain before this Court.

──────

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date:   December 29, 2008